1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    JESSICA FAGALNIFIN,                    No. 2:22-cv-00734-DJC-JDP

12                   Plaintiff,

13         v.                                ORDER

14    FIRST TECHNOLOGY FEDERAL
      CREDIT UNION D/B/A FIRST TECH
15    FEDERAL CREDIT UNION, a federal
      chartered credit union; and DOES 1
16    through 50, inclusive

17                   Defendants.

18
           After leaving her job with Defendant, Plaintiff alleged that she had been
19
      misclassified as an exempt employee and therefore did not receive protections
20
      afforded to non-exempt employees under state law.  Plaintiff also alleges that when
21
      she attempted to exercise her right to family and medical leave under a federal
22
      statute, Defendant interfered and retaliated.  Defendant argues that Plaintiff received
23
      leave under the federal statute and that it did not otherwise retaliate.  Defendant also
24
      maintains that Plaintiff's claim regarding alleged violations of labor laws is overly
25
      broad and unspecified such that summary adjudication is required as a matter of law.
26
      For the following reasons, the Court GRANTS IN PART and DENIES IN PART
27
      Defendant's Motion for Summary Adjudication (ECF No. 62).
28
                                         1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BACKGROUND**

Jessica Fagalnifin ("Plaintiff") worked for First Tech Federal Credit Union ("Defendant") from 2018 to 2021.  (Second Amended Complaint ("SAC") ¶¶ 16, 29, ECF No. 15.)  Throughout her employment, Plaintiff alleges that Defendant misclassified her and other employees as exempt, which resulted in noncompliance with state regulations for non-exempt employees regarding breaks and overtime pay.  (*Id.* ¶¶ 4–6.)  In May 2019, Plaintiff took leave under the Family Medical Leave Act ("FMLA") to care for her sick daughter.  (Penna Decl. (ECF No. 62-3) ¶ 10; Fagalnifin Decl. (ECF No. 64-2) ¶ 9.)  Plaintiff alleges that she was retaliated against for using FMLA leave, including by a coworker making "inappropriate comments."  (SAC ¶ 26.)  In April 2020, Plaintiff took leave because her daughter's school was closed because of the COVID-19 pandemic.  (Penna Decl. ¶ 12; Price Decl., Ex. B, Fagalnifin Dep. (ECF No. 62-3) at 176:5–177:1.)  Because Plaintiff was told by her supervisors that her absence did not qualify for FMLA leave, she did not submit a formal request and instead utilized paid time off.  (Fagalnifin Decl. ¶ 11.)  Plaintiff alleges that Defendant therefore interfered with her FMLA rights, as she argues she was entitled to FMLA leave in April 2020.  (SAC ¶¶ 54, 56.)

In the operative complaint, Plaintiff brings seven claims: (1) failure to pay overtime wages pursuant to California Labor Code Sections 510 and 558; (2) failure to provide meal breaks pursuant to California Labor Code Sections 226.7 and 512; (3) failure to provide rest breaks pursuant to California Labor Code Section 226.7; (4) FMLA retaliation and interference pursuant to 29 U.S.C. Section 2615; (5) violation of the Private Attorney General Act ("PAGA") pursuant to California Labor Code Section 2698; (6) libel pursuant to California Civil Code Section 45; and (7) intentional infliction of emotional distress.  (SAC ¶¶ 35–76.)

Plaintiff originally filed suit in the Superior Court of California, Placer County.  (Notice of Removal, ECF No. 1.)  Defendant then timely removed the case under federal question jurisdiction.  (*Id.* at 4.)  Concurrent with the present motion, Plaintiff

1   requested – and the Court granted – dismissal with prejudice of her libel and

2   intentional infliction of emotional distress claims.  (Request for Dismissal, ECF No. 61;

3   Order Granting Request to Dismiss, ECF No. 63.)

4       Defendant now moves for summary adjudication as to Plaintiff's FMLA and

5   PAGA claims.  (Mot. for Summary Adjudication, ECF No. 62.)  Specifically, Defendant

6   seeks summary adjudication as to five noticed issues: (1) the FMLA interference claim

7   fails because Plaintiff received leave under the FMLA; (2) the FMLA retaliation claim

8   fails because Plaintiff received leave under the FMLA; (3) the FMLA retaliation claim

9   fails because Plaintiff cannot establish a causal connection between an adverse

10  employment action and her FMLA leave; (4) the PAGA claim fails because it cannot be

11  proven in an efficient manner; and (5) the PAGA claim fails because it is overbroad.

12  (Notice of Mot. at 2–3, ECF No. 62.)  The matter is fully briefed.  On June 12, 2025, the

13  Court heard oral argument from the parties on this motion and took the matter under

14  submission.  (ECF No. 69.)

15  **LEGAL STANDARD**

16      Summary judgment is appropriate when the record, read in the light most

17  favorable to the non-moving party, indicates "that there is no genuine dispute as to

18  any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

19  Civ. P. 56(a).  A genuine dispute of fact exists only if "there is sufficient evidence

20  favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v.*

21  *Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  If the nonmoving party fails to make this

22  showing, "the moving party is entitled to a judgment as a matter of law."  *Celotex*

23  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

24  **DISCUSSION**

25  **I.   Evidentiary Objections**

26      As an initial matter, Defendant submitted evidentiary objections to the

27  declarations of Charles Raub (ECF No. 65-1) and Jessica Fagalnifin (ECF No. 65-2) on

28  the grounds that these declarations contradict deposition testimony and do not satisfy

the Federal Rules of Evidence.  The Court has reviewed these evidentiary objections but declines to rule as to each individually, as courts self-police evidentiary issues on motions for summary judgment and a formal ruling is unnecessary to the determination of this motion.  *See Grindstone Indian Rancheria v. Olliff*, No. 2-17-CV-02292-JAM-JDP, 2021 WL 3077464, at *1 (E.D. Cal. July 21, 2021) (citing *Sandoval v. Cty. Of San Diego*, 985 F.3d 657, 665 (9th Cir. Jan. 13, 2021).  The Ninth Circuit held, "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."  *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001).  As such, objections are generally unnecessary on summary judgment because they are "duplicative of the summary judgment standard itself."  *Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).  "[P]arties briefing summary judgment motions would be better served to 'simply argue' the import of the facts reflected in the evidence rather than expending time and resources compiling laundry lists of relevance objections."  *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021) (citation omitted).

The only evidentiary rule for summary judgment relevant here is the "sham affidavit" rule, which is that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009).  The Court did not consider statements contained in the Declaration of Plaintiff Jessica Fagalnifin (ECF No. 64-2) to the extent that they were irrelevant to the Court's resolution of her claims or contradict her deposition testimony.  *See Block*, 253 F.3d at 419 n.2; *infra* Discussion Part II.

## II.    FMLA

"The FMLA creates two interrelated substantive rights for employees.  First, an employee has the right to take up to twelve weeks of leave . . . .  Second, an employee who takes FMLA leave has the right to be restored to his or her original position or to a position equivalent in benefits, pay, and conditions of employment upon return from

1    leave. " *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1132 (9th Cir. 2003) (citations

2    omitted).  Plaintiff alleges both violations of the FMLA: interference and retaliation.

3    **A. Interference**

4        Plaintiff argues that Defendant interfered with her use of FMLA leave during the

5    COVID-19 pandemic in 2020.  (Opp'n at 5, ECF No. 64.)  To establish a claim for FMLA

6    interference, among other factors, a plaintiff must show that she was entitled to leave

7    under the FMLA.  *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011).

8    Because there is no evidence showing that Plaintiff was entitled to FMLA leave, her

9    claims fails.

10        An employee is entitled to FMLA leave: (A) because of the birth of a child; (B)

11    because of the placement of a child for adoption or foster care; (C) to care for a

12    spouse or child who has a serious health condition; (D) because of a serious health

13    condition that makes the employee unable to perform the functions of their position;

14    or (E) because of any qualifying exigency arising from a family member on active duty

15    in the Armed Forces.  29 U.S.C. § 2612(a)(1).  Plaintiff does not provide any evidence

16    demonstrating that she satisfied one of these statutory provisions.  Rather, she states

17    that she took leave in 2020 because her daughter's school was closed because of the

18    COVID-19 pandemic.  (Fagalnifin Dep. at 176:5–177:1, 180:2–10, 276:11–278:6.)

19        The only other statutory provision available at the time Plaintiff took leave was a

20    temporary expansion of the FMLA to cover employees who took leave because their

21    children's schools were closed because of the pandemic.  29 U.S.C. § 2612(a)(1)(F); 29

22    U.S.C. § 2620(a)(2).  While at first glance Plaintiff falls within the intended beneficiaries

23    of this temporary expansion, the amendment did not apply to her.  The temporary

24    expansion only covered employers with fewer than 500 employees.  29 U.S.C.

25    § 2620(a)(1)(B).  As of April 15, 2025, Defendant has approximately 1,650 employees.

26    (Penna Decl. ¶ 5.)  At oral argument, Defendant represented – and Plaintiff conceded

27    – that Plaintiff was ineligible for the temporary expansion because Defendant was not

28    covered by the amendment, as Defendant employed more than 500 employees when

1     Plaintiff requested leave.

2           Accordingly, because Plaintiff provides no evidence showing she was entitled

3 to leave under the FMLA, her claim necessarily fails and the Court grants Defendant's

4 motion as to the issue of FMLA interference.  *See Sanders*, 657 F.3d at 778.

5     **B.  Retaliation**

6           Plaintiff argues that she suffered adverse employment actions following her

7 FMLA leave in 2019 because another employee made "snide comments" and because

8 she received an admonishment in an official performance review.  (Opp'n at 6.)  To

9 establish a claim for retaliation under the FMLA, a plaintiff must show: "(1) she

10 engaged in a protected activity under the FMLA; (2) she suffered some adverse

11 employment action by the employer following the protected activity; and (3) the

12 adverse employment action was causally linked to the protected activity."  *Perata v.*

13 *City & Cnty. of San Francisco*, No. 21-CV-02819-TSH, 2023 WL 4537695, at *24 (N.D.

14 Cal. July 13, 2023) (quoting *Yphantides v. Cty. of San Diego*, No. 21CV1575-

15 GPC(BLM), 2023 WL 2438916, at *15 (S.D. Cal. Mar. 9, 2023)).  Regarding an adverse

16 employment action, the Ninth Circuit held, "Although the type of sanction need not be

17 particularly great in order to find that rights have been violated, the plaintiff must

18 nonetheless demonstrate the loss of a valuable governmental benefit or privilege.

19 Mere threats and harsh words are insufficient."  *Nunez v. City of Los Angeles*, 147 F.3d

20 867, 875 (9th Cir. 1998) (cleaned up).

21           First, regarding another employee's remarks, Plaintiff states that Erika Cantrell,

22 a senior member of Defendant's staff, "expressed derisive incredulity" by "mocking

23 the health" of Plaintiff's daughter.  (Fagalnifin Decl. ¶ 10.)  As a matter of law, these

24 comments cannot form the basis of an adverse employment action because "harsh

25 words are insufficient."  *See Nunez*, 147 F.3d at 875.

26           Second, as to her admonishment, Plaintiff states that she was critiqued for

27 excessive absences in her quarterly performance review in July 2021.  (Fagalnifin Decl.

28 ¶ 12; *see also id.*, Ex A.)  Defendant argues Plaintiff's declaration should be stricken

because she previously testified that she received a positive performance review that resulted in a pay increase in July 2021. (Fagalnifin Dep. at 220:19–221:13.) The Court strikes Plaintiff's declaration to the extent it states that Plaintiff was admonished in a performance review in July 2021. *See Block*, 253 F.3d at 419 n.2. However, the "sham affidavit" rule only applies to sworn statements, not proffered evidence that contradicts prior testimony. Plaintiff introduced the performance review itself, which states that she "had a pattern of excessive unscheduled absences." (Fagalnifin Decl., Ex A.) The Court can therefore consider this evidence.

The Court finds that no reasonable trier of fact would find a causal connection between Plaintiff's FMLA leave in 2019 and her performance review in 2021. Plaintiff's supervisor noted on the performance review that it was not discussed with Plaintiff as she already had resigned from her job. (*Id*.) Plaintiff presents no evidence explaining how a performance review created after she resigned from her job is related to FMLA leave she took two years prior. Because there is insufficient evidence for a trier of fact to find that Plaintiff's admonishment was causally related to her FMLA leave, Plaintiff's FMLA retaliation claim fails. *See Perata*, 2023 WL 4537695, at *24.

Accordingly, the Court grants Defendant's motion as to the FMLA retaliation claim. As such, the Court dismisses the entirety of Plaintiff's FMLA claim.[1]

### III.    PAGA

Unlike a more typical lawsuit where a plaintiff seeks compensatory damages for their injuries, a PAGA plaintiff recovers civil penalties on behalf of the California Labor Workforce Development Agency ("LWDA"). *L Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014). As such, "PAGA plaintiffs are private attorneys general who, stepping into the shoes of the LWDA, bring claims on behalf of the state agency." *Id.* To establish a PAGA cause of action, a plaintiff must have been

---

[1] Though the Court dismisses the only federal claim in this action, it chooses to exercise supplemental jurisdiction over the state law claims. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 940 (9th Cir. 2012) (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)).

1    employed by the alleged violator and have experienced at least one violation.

2    *Williams v. Alacrity Sols. Grp., LLC*, 331 Cal. Rptr. 3d 877, 883–84 (2025).  Defendant

3    argues that Plaintiff's PAGA claim should be dismissed because its scope is too wide

4    and it cannot be efficiently tried.  (Mot. at 10–15.)  The Court addresses these issues in

5    turn.

6    **A.  The Scope of the Claim**

7      Defendant argues that the scope of the PAGA claim is overbroad regarding the

8    PAGA time period and the underlying Labor Code violations.  (Mot. at 13–15.)

9    **1. The PAGA Period**

10      Defendant asks the Court to limit the PAGA period (i.e. limit the timeframe of

11    alleged Labor Code violations that Plaintiff can present at trial) to June 15, 2021,

12    through July 30, 2021.  (Mot. at 13.)  Plaintiff filed a PAGA notice of claims on June 15,

13    2022.  (Price Decl., Ex. D.)  Defendant argues that "the penalty period for PAGA

14    actions is one year prior to the date of filing the PAGA notice."  (Mot. at 6 (citing Cal.

15    Code Civ. P § 340; Cal. Lab. Code § 2699.3).)  Neither of the cited statutory provisions

16    support Defendant's contention that a PAGA penalty period is one year prior to the

17    filing of notice.  Code of Civil Procedure Section 340 states that the statute of

18    limitations for actions like PAGA is one year.[2]  Cal. Code Civ. P § 340; *see also*

19    *Williams*, 331 Cal. Rptr. 3d at 884 ("[T]he statute of limitations period for a PAGA

20    action is one year.").  Labor Code Section 2699.3 lists the requirements a PAGA

21    plaintiff must satisfy before filing action, such as giving written notice and allowing the

22    LWDA an opportunity to investigate.[3]  Cal. Lab. Code § 2699.3.

23      Defendant presents no caselaw, nor can the Court find any, holding that the

24    time period of a PAGA claim is one year before the filing of notice.  On the contrary, "a

25    PAGA action accrues when the Labor Code violation last occurred; as applied here,

26

27    ---

    [2] Defendant does not contest that Plaintiff satisfied the statute of limitations.

28    [3] Defendant also does not contest that Plaintiff complied with these statutory requirements.

1    when a PAGA plaintiff is no longer employed by the violator-employer, the violation

2    last occurred (and the cause of action accrues) on the PAGA plaintiff's last day of

3    employment." *Williams*, 331 Cal. Rptr. 3d at 884.  Because Plaintiff's last day of

4    employment with Defendant was July 30, 2021, her PAGA action did not accrue until

5    then.  *See id.*; Fagalnifin Dep., Ex. 18.  The Court holds that because Plaintiff's PAGA

6    claim had not accrued until her last day of employment, Plaintiff is not prohibited from

7    introducing evidence of violations that occurred before June 15, 2021.  The Court

8    therefore declines to limit the timeframe of alleged violations that Plaintiff can

9    introduce at trial.

10              **2. Whether the Underlying Claims are Overbroad and Unspecified**

11              Defendant argues that Plaintiff's PAGA claim is overbroad because she cannot

12   sustain the underlying claims for violations of the Labor Code.  (Mot. at 13–15.)  The

13   crux of Plaintiff's theory of Defendant's Labor Code violations is that she and other

14   employees were misclassified as exempt workers.  (Opp'n at 8–10.)  To be classified as

15   exempt, an employee must earn no less than two times the state minimum wage for

16   full-time employment, which is defined as 40 hours per week.  Cal. Code Regs. tit. 8,

17   § 11040.  California's Department of Industrial Relations calculates this threshold for

18   exemption as two times the minimum wage, multiplied by 40 hours per week, and

19   then multiplied by 52 weeks per year.[4]  In 2021, the minimum wage was $14.00 per

20   hour.[5]  Thus, to be considered exempt in 2021, an employee needed to earn at least

21   $58,240.  This salary threshold is a floor for an employee to be non-exempt, as an

22   employee earning less than the threshold cannot be classified as exempt.  Cal. Code

23   _____

24   [4] State of California Department of Industrial Relations, The Labor Commissioner's Office Reminds
     Employers that California's Minimum Wage Increases to $16.50 Per Hour on January 1,

25   https://www.dir.ca.gov/DIRNews/2024/2024-
     107.html#:~:text=An%20employee%20must%20earn%20no (last visited June 17, 2025) (calculating the

26   threshold amount for exemption as two times the minimum wage multiplied by 40 hours per week and
     52 weeks per year).

27   [5] State of California Department of Industrial Relations, Labor Commissioner's Office Minimum Wage
     Frequently Asked Questions, https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last visited June 17,

28   2025).

1    Regs. tit. 8, § 11040.  Upon Plaintiff's request, Defendant furnished a list of employees

2    who were exempt salaried employees earning less than $58,240 in 2021.  (Price Decl.

3    (ECF No. 62-3), Ex. E.)  Defendant's list identifies seven employees, including Plaintiff,

4    who were salaried exempt workers in 2021 that earned less than $58,240.  *See id.*

5    Accordingly, a reasonable trier of fact could find that Defendant misclassified these

6    employees as exempt.

7         Plaintiff alleges that by misclassifying her and other employees as exempt,

8    Defendant violated three provisions of the Labor Code.  First, she alleges that

9    Defendant failed to pay overtimes wages in violation of Labor Code Section 510.

10   (Compl. ¶ 59.)  This provision does not apply to exempt workers, and thus Plaintiff

11   alleges she was unlawfully deprived of this protection because she was misclassified

12   as exempt.  *See* Cal. Lab. Code § 515.  Second, Plaintiff states that Defendant failed to

13   provide rest breaks in violation of Labor Code Section 226.7.  (Compl. ¶ 59.)  This

14   provision also does not apply to exempt workers, and thus Plaintiff alleges she was not

15   provided this right because she was misclassified.  Third, Plaintiff alleges that

16   Defendant failed to provide meal breaks in violation of Labor Code Section 512.

17   (Compl. ¶ 59.)  This provision applies to exempt and non-exempt workers alike.

18   Accordingly, Plaintiff's allegation that Defendant violated this provision is independent

19   from her allegation that she and others were misclassified as exempt.  In support of

20   these alleged violations, Plaintiff states that she was denied overtime pay, meal

21   breaks, and rest breaks.  (Fagalnifin Decl. ¶ 2.)  Accordingly, a reasonable trier of fact

22   – already finding that Defendant misclassified Plaintiff and other employees as

23   exempt – could further find that Defendant violated all three provisions of the Labor

24   Code.

25        Defendant argues it did not violate any provision of the Labor Code because it

26   provided Plaintiff and other employees with a handbook detailing its policies.  (Mot. at

27   13–14.)  Regarding meal breaks, the handbook states, "As a general rule it is expected

28   that employees scheduled to work at least 6 hours in one day should receive a lunch

1    break of 30 minutes in addition to a schedule break(s)." (Penna Decl., Ex. A.) The

2    handbook's California addendum explains that it is Defendant's policy to relieve

3    employees of all duty during meal periods so that they can use the break as they wish.

4    (*Id.*) However, Plaintiff states that she was denied meal breaks because she was

5    "repeatedly asked to run errands for [her] superiors." (Fagalnifin Decl. ¶ 2.) There

6    thus is a genuine dispute as to whether Defendant impeded or discouraged

7    employees from taking their meal breaks. *See Brinker Rest. Corp. v. Superior Ct.*, 53

8    Cal. 4th 1004, 1040 (2012).

9        As for rest breaks, the handbook clearly states that Defendant "provides *non-*

10    *exempt* employees with the opportunity to take" such breaks. (*Id.* (emphasis added).)

11    Similarly, regarding overtime, the handbook states that Defendant "will pay *non-*

12    *exempt* employees overtime as required by federal and state law." (*Id.* (emphasis

13    added).) Defendant therefore cannot argue that its handbook put Plaintiff and other

14    allegedly misclassified employees on notice of their rights as non-exempt employees

15    under the Labor Code.

16        Defendant's final argument is that because Plaintiff cannot establish liability as

17    to all employees, the PAGA claim should be dismissed. (Mot. at 15.) Defendant

18    explains that Plaintiff cannot prove liability as to all employees because at least two of

19    the seven employees allegedly misclassified as exempt "never complained to First

20    Tech about any unpaid wages." (*Id.*) To support this proposition, Defendant presents

21    two declarations, each from a supervisor of an employee allegedly misclassified as

22    exempt. (*See* Kaut Decl. (ECF No. 62-3); Jensen Decl. (ECF No. 62-3).) These

23    declarations only show that two of Defendant's supervisory employees have not

24    personally seen or learned of any violations of the Labor Code. (*See* Kaut Decl. ¶¶ 14,

25    23; Jensen Decl. ¶¶ 14, 21.) This evidence does not show that Defendant never

26    violated the Labor Code, or that it is not liable as to the two employees allegedly

27    misclassified as exempt. As such, this evidence is not dispositive and does not

28    establish that the PAGA claim is overbroad.

1      Accordingly, the Court denies Defendant's motion for summary adjudication

2  as to the issue of the breadth of the PAGA claim.

3      **B. The Manageability of the Claim**

4      Finally, Defendant argues the PAGA claim should be dismissed because it

5  cannot efficiently be tried.  (Mot. at 10–13.)  Defendant states that, to determine

6  whether it improperly classified employees as exempt, the trier of fact would need to

7  examine the salary and job characteristics of each employee.[6]  (*Id.* at 11–12.)

8  Defendant claims that this process cannot be done in an efficient manner.  (*Id.* at 12.)

9  Defendant furthers that even if Plaintiff could establish that she and other employees

10 were misclassified, Plaintiff would then have to show that Defendant violated the

11 Labor Code, which would also involve an individual-level analysis that would be

12 cumbersome.  (*Id.*)  Defendant therefore asks the Court to hold that the PAGA claim

13 fails as a matter of law.

14      Ironically, Defendant relies on a California Supreme Court decision that

15 forecloses its argument.  *See* Mot. at 10–11 (citing *Estrada v. Royalty Carpet Mills, Inc.*,

16 15 Cal. 5th 582 (2024)).  In *Estrada*, the California Supreme Court held that "trial courts

17 lack inherent authority to strike a PAGA claim on manageability grounds."  *Estrada*, 15

18 Cal. 5th at 619.  Instead, the court emphasized that "trial courts have numerous tools

19 that can be used to manage complex cases" like PAGA cases, such as "[r]epresentative

20 testimony, surveys, and statistical analysis."  *Id.* at 618 (citations omitted).  "Indeed,

21 given that the purpose of the recovery of civil penalties in a PAGA action is to

22 remediate present violations and deter future ones rather than to redress employees'

23 injuries, statistical methods designed to reveal generalized characteristics of a

24 population seem particularly appropriate for use in adjudicating such claims."  *Id.* at

25 619 (cleaned up).  The *Estrada* court clarified that although a trial court may not

26

27 ───────────────
   [6] In addition to the salary threshold, California regulations dictate whether an employee is exempt by
28 determining if their job responsibilities fall under the purview of an Executive, Administrative, or
   Professional exemption.  Cal. Code Regs. tit. 8, § 11040.

1    dismiss a PAGA claim on manageability grounds, a court still may limit the evidence

2    that a party can present at trial.  *Id.*

3         Defendant requests summary adjudication on the PAGA claim not because

4    there is no genuine issue of material fact, but because Defendant believes the claim

5    would be too complicated for the Court to adjudicate.  This argument is substantively

6    the same as asking the Court to do what is explicitly prohibited under controlling state

7    law: strike or dismiss a PAGA claim on manageifin grounds.  *See id.*  Accordingly,

8    the Court holds it cannot grant summary adjudication as to this claim.

9         After Plaintiff correctly discussed the import of *Estrada*, Defendant made a final

10   effort at seeking dismissal by focusing on a single line in the court's ruling.  (*See* Opp'n

11   at 11; Reply at 10–11.)  The *Estrada* court held that "a trial court may issue substantive

12   rulings, including those . . . on motions for summary judgment . . . to fairly and

13   efficiently adjudicate an action in cases in which a plaintiff pleads the claim in such an

14   overbroad or unspecific manner that the plaintiff is unable to prove liability as to all or

15   most employees."  *Estrada*, 15 Cal. 5th at 619–20.  Defendant cites this holding but

16   fails to state what it wants the Court to limit in terms of Plaintiff's evidence.  (*See* Reply

17   at 10–11.)  Rather, Defendant simply asks the Court to find that "Plaintiff cannot

18   establish liability as to all or most of the employees without individually speaking with

19   them."[7]  (*Id*. at 11.)  As explained above, the *Estrada* court only left authority for a

20   district court to limit evidence that could be presented at trial, not dismiss a PAGA

21   claim on manageability grounds.  *See Estrada*, 15 Cal. 5th at 619.

22        According, the Court denies Defendant's motion for summary adjudication as

23   to the issue of the efficiency of the PAGA claim.[8]

24   _____

25   [7] Throughout its briefing, Defendant makes much ado about Plaintiff's statement in her deposition that
     the only way to determine if an employee experienced a Labor Code violation "would be to go person
     by person and ask them." (*See e.g.*, Mot. at 15 (citing Fagalnifin Dep. at 199:3–20).)  Defendant's

26   argument does not persuade the Court.  After all, Plaintiff is not a lawyer or expert on how courts
     handle PAGA claims.  Considering the case law discussed herein, the Court attributes no weight to

27   Plaintiff's statement in determining this motion.

28   [8] At oral argument, Defendant represented that the California Civil Jury Instructions ("CACI") list

**CONCLUSION**

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Adjudication (ECF No. 62). Specifically, the Court grants Defendant's Motion as to the FMLA interference and retaliation claims, such that Plaintiff can no longer pursue a claim based in the FMLA. The Court denies Defendant's Motion as to the PAGA claim.

IT IS SO ORDERED.

Dated:  **June 20, 2025**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

---

manageability as an element of a PAGA claim that a plaintiff must prove at trial. The Court is unable to locate any CACI instructions for PAGA actions and therefore disregards this argument.

14